UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                          Hon. Mark A. Goldsmith

v.

                          Case No. 22-cr-20200

D-2 ALI SAAD,

        Defendant.

_____/

**F I L E D**

**JAN 1 4 2025**

CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

**Rule 11 Plea Agreement**

The United States of America, by and through the United States Department of Justice, Criminal Division ("the government"), and the defendant, Ali Saad ("the defendant" or "Saad"), have reached a plea agreement under Federal Rule of Criminal Procedure 11. The plea agreement's terms are:

### 1.    Count of Conviction

Count Two of the Amended Indictment charges the defendant with Conspiracy to Commit Health Care Fraud and Wire Fraud under 18 U.S.C. § 1349. The defendant will plead guilty to the Health Care Fraud object of Count Two.

### 2.    Statutory Minimum and Maximum Penalties

The defendant understands that the count to which he is pleading guilty carries no minimum statutory penalty, and the following maximum statutory penalties:

**Page 1 of 20**

| Count Two | Term of imprisonment: | Up to 10 years |
|---|---|---|
| | Fine: | Up to $250,000 or twice the pecuniary loss or gain |
| | Term of supervised release: | Up to 3 years |

**3.    Agreement To Dismiss Remaining Charges and Not to Bring Additional Charges**

If the Court accepts this agreement and imposes a sentence consistent with its terms, the government will move to dismiss any remaining charges and will not bring additional charges against the defendant for the conduct reflected in the factual basis of this Rule 11 Plea Agreement.

**4.    Elements of the Count of Conviction**

The elements of the health care fraud object of Count Two, are:

**First:**       Two or more persons conspired or agreed to commit the crime of Health Care Fraud, in violation of 18 U.S.C. § 1347; and

**Second:**    The defendant, knowing the unlawful purpose of the plan, willfully joined in it.

The health care fraud statute, 18 U.S.C. § 1347, makes it a federal offense for anyone, in connection with the delivery of any health care benefits, items, or services, to knowingly and willfully execute, or attempt to execute, a scheme or artifice: (1) to defraud any health care benefit program; or (2) to obtain, by means of

materially false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program.

## 5.    Factual Basis

The parties agree that the following facts are true, accurately describe the defendant's role in the offense, and provide a sufficient factual basis for the defendant's guilty plea:

From in or around January 2016, and continuing through at least March 2020, in the Eastern District of Michigan, Saad knowingly and willfully joined, agreed to, and participated in an ongoing scheme to defraud Medicare, in violation of Title 18, United States Code, §1349. Medicare is a "health care benefit program" of the United States, as defined by Title 18, United States Code, § 24(b) and affects commerce.

Saad joined in a conspiracy and participated in it with, Sherif Khalil, the operator of Spectra Clinical Labs, Inc. ("Spectra"), marketer Kurt Schroeder, Nancy Harris, the owner of Charlotte Pain Management Center ("CPMC"), and others, to unlawfully enrich themselves by, among other things:  submitting, causing or allowing the submission of false and fraudulent claims to Medicare for Urine Drug Testing ("UDT") that was arranged for by Saad and Schroeder in return for kickback payments from Khalil and others.

Spectra was a toxicology laboratory headquartered in California, with operations in the Eastern District of Michigan. Saad was a marketer in Michigan and was responsible for marketing various Metro-Detroit physician offices to be sent to Spectra and billed to Medicare. Beginning in or around May 2015 and continuing through at least March 2020, Saad agreed with Khalil, and others, to be paid a percentage of each Medicare reimbursement obtained by Spectra as a result of UDT ordered by physicians to whom Saad marketed. Saad was trained by Khalil that Medicare paid different amounts for different types of UDT and that it paid the most for "comprehensive" UDT. Saad was trained by Khalil to market to doctors that order a high percentage of "comprehensive" UDT, rather than lower reimbursing UDT, because Medicare paid the most for these tests.

Specifically, Saad, at the direction and authorization of Khalil and others, obtained physician orders for comprehensive UDT by (i) paying for rental space that Spectra did not need in exchange for physicians to agree to send UDT testing orders to Spectra, and (ii) paying money to a pain management practice in exchange for the pain management practice sending UDT testing orders to Spectra..

Saad introduced Khalil to Schroeder for the purpose of hiring Schroeder as a marketer for Spectra. At Khalil's direction, Saad provided training and instruction to Schroeder on behalf of Spectra. In particular, and at Khalil's direction, Saad trained Schroeder to target marketing efforts to physicians who ordered a high

volume of UDT testing and a high percentage of "comprehensive" UDT testing. In exchange, Saad agreed ~~with Khalil~~ to be paid a percentage of each Medicare reimbursement obtained by Spectra as a result of UDT arranged for by Schroeder. Saad was aware that Schroeder obtained physician orders for "comprehensive" UDT from CPMC and that CPMC was operated by Harris.

In or around late 2016, Khalil and others directed Saad to retain a lawyer for the purpose of obtaining advice concerning the Anti-Kickback Statute. At the direction of Khalil and others, Saad obtained advice from a lawyer that Spectra's arrangement of directing the payment of marketers a percentage of Medicare reimbursements was in violation of the Anti-Kickback Statute. The lawyer advised Saad that the marketers must be paid through an independent marketing company that received a flat marketing fee from Spectra. Saad told Khalil and others about the advice he received from the lawyer. Subsequently, Khalil and others created a marketing company, called Top Tier Consultants, for the purpose of paying marketers. However, the lawyer's advice was not followed in substance because Khalil and others installed a close relative to "run" Top Tier. In actuality, Top Tier was not independent because the relative assigned to "run" Top Tier was controlled by Khalil and others.

In or around 2017, Khalil informed Saad that Medicare was auditing Spectra claims for "comprehensive" UDT. Khalil directed Saad to hire a compliance officer

Page **5** of **20**

for the purpose of responding to Medicare audits. Saad was present for meetings between Khalil and the compliance officer in which Khalil was informed that billing for "comprehensive" UDT should be rare and that Spectra was required to collect medical records to justify billing Medicare for "comprehensive" UDT. Despite this advice from the compliance officer, Spectra did not collect the necessary records.

Each month, Spectra provided Saad a spreadsheet detailing the amount insurers, including Medicare, reimbursed on UDT orders he had arranged. Saad was aware that Khalil was responsible for overseeing Spectra's submission of claims to Medicare and that Khalil was responsible for determining the amount Spectra billed to Medicare. Saad, however, was only aware of the amount paid by Medicare to Spectra and not the amount Spectra billed to Medicare. Between January 2016 and March 2020, Medicare paid Spectra approximately $2,517,360.12, for UDT orders for which Saad was paid by Khalil and others. During this time, Khalil and others paid Saad approximately $209,735.72 in return for arranging "comprehensive" UDT orders billed by Khalil, by and through Spectra, to Medicare.

## 6. Advice of Rights

The defendant has read the Amended Indictment, has discussed the charges and possible defenses with his attorney, and understands the crime charged. The defendant understands that, by pleading guilty, he is waiving many important rights, including the following:

A.  The right to plead not guilty and to persist in that plea;

B.  The right to a speedy and public trial by jury;

C.  The right to the assistance of an attorney at every critical stage of the proceedings, including trial;

D.  The right to an appointed attorney, if the defendant cannot afford to retain one;

E.  The right to be presumed innocent and to require the government to prove the defendant guilty beyond a reasonable doubt at trial;

F.  The right to confront and cross-examine adverse witnesses at trial;

G.  The right to testify or not to testify at trial, whichever the defendant chooses;

H.  If the defendant chooses not to testify at trial, the right to have the jury informed that it may not treat that choice as evidence of guilt;

I.  The right to present evidence or not to present evidence at trial, whichever the defendant chooses; and

J.  The right to compel the attendance of witnesses at trial.

**7.  Collateral Consequences of Conviction**

The defendant understands that his conviction here may carry additional consequences under federal or state law. The defendant understands that, if he is not a United States citizen, his conviction here may require him to be removed from the

United States, denied citizenship, and denied admission to the United States in the future. The defendant further understands that the additional consequences of his conviction here may include, but are not limited to, adverse effects on the defendant's immigration status, naturalized citizenship, right to vote, right to carry a firearm, right to serve on a jury, and ability to hold certain licenses or to be employed in certain fields. The defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty what the additional consequences of the defendant's conviction might be. The defendant nevertheless affirms that the defendant chooses to plead guilty regardless of any immigration or other consequences from his conviction.

## 8.    Defendant's Guideline Range

### A.    Court's Determination

The Court will determine the defendant's guideline range at sentencing.

### B.    Acceptance of Responsibility

The government recommends under Federal Rule of Criminal Procedure 11(c)(1)(B) that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a). Further, if the defendant's offense level is 16 or greater and the defendant is awarded the two-level reduction under USSG § 3E1.1(a), the government recommends that the defendant receive an additional one-level reduction for acceptance of responsibility under USSG § 3E1.1(b). If,

however, the government learns that the defendant has engaged in any conduct inconsistent with acceptance of responsibility—including, but not limited to, making any false statement to, or withholding information from, his probation officer; obstructing justice in any way; denying his guilt on the offense to which he is pleading guilty; committing additional crimes after pleading guilty; or otherwise demonstrating a lack of acceptance of responsibility as defined in USSG § 3E1.1— the government will be released from its obligations under this paragraph, will be free to argue that the defendant not receive *any* reduction for acceptance of responsibility under USSG § 3E1.1, and will be free to argue that the defendant receive an enhancement for obstruction of justice under USSG § 3C1.1.

### C.    Other Guideline Recommendations

The parties also recommend under Federal Rule of Criminal Procedure 11(c)(1)(B) that the following guideline provisions apply:

- A base offense level of 6 (U.S.S.G. § 2B1.1(a)(2))

- A 16-level increase for a loss amount above $1,500,000 (U.S.S.G. § 2B1.1(b)(1)(I))

- A 2-level increase for a health care fraud offense with a loss amount above $1,000,000 (U.S.S.G. § 2B1.1(b)(7))

- A 2-level decrease for the zero-point offender adjustment (U.S.S.G. § 4C1.1)

The parties have no other recommendations as to the defendant's guideline calculation.

### D. Factual Stipulations for Sentencing Purposes

The parties stipulate that the following facts are true and that the Court may, but is not required to, rely on them in calculating the defendant's guideline range and imposing sentence: The intended loss amount for Saad is $2,517,360.12. This is the amount he was aware Medicare was billed and paid as a result of his actions in furtherance of the conspiracy for which he is pleading guilty.

### E. Parties' Obligations

Both the defendant and the government agree not to take any position or make any statement that is inconsistent with any of the guideline recommendations or factual stipulations in paragraphs 8.B, 8.C, or 8.D. Other than the guideline recommendations, neither party is otherwise restricted in what it may argue or present to the Court as to the defendant's guideline calculation.

### F. Not a Basis to Withdraw

The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if he disagrees, in any way, with the guideline range determined by the Court, even if that guideline range does not incorporate the parties' recommendations or factual stipulations in paragraphs 8.B, 8.C, or 8.D. The

government likewise has no right to withdraw from this agreement if it disagrees with the guideline range determined by the Court.

## 9. Exclusion from the Medicare Program and Other Federal Health Care Programs

The defendant understands and acknowledges that as a result of this plea, the defendant will be excluded from Medicare, Medicaid, and all Federal health care programs. The defendant agrees to complete and execute all necessary documents provided by any department or agency of the federal government, including but not limited to the United States Department of Health and Human Services, to effectuate this exclusion within 60 days of receiving the documents. This exclusion will not affect the defendant's right to apply for and receive benefits as a beneficiary under any Federal health care program, including Medicare and Medicaid.

## 10. Imposition of Sentence

### A. Court's Obligation

The defendant understands that in determining his sentence, the Court must calculate the applicable guideline range at sentencing and must consider that range, any possible departures under the sentencing guidelines, and the sentencing factors listed in 18 U.S.C. § 3553(a), and apply any applicable mandatory minimums.

### B. Imprisonment

#### 1. Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the government recommends that the defendant's sentence of imprisonment on Count Two not exceed the bottom of the defendant's guideline range as determined by the Court.

### 2.    No Right to Withdraw

The government's recommendation in paragraph 10.B.1 is not binding on the Court. The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the government's recommendation. The government likewise has no right to withdraw from this agreement if the Court decides not to follow the government's recommendation. If however, the Court rejects or purports to reject any other term or terms of this plea agreement, the government will be permitted to withdraw from the agreement.

### C.    Supervised Release

### 1.    Recommendation

A term of supervised release, if imposed, follows the term of imprisonment. There is no agreement on supervised release. In other words, the Court may impose any term of supervised release up to the statutory maximum term, which in this case is three years. The agreement concerning imprisonment described above does not apply to any term of imprisonment that results from any later revocation of supervised release.

### 2. No Right to Withdraw

The parties' recommendation is not binding on the Court. The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the parties' recommendation. The defendant also understands that the government's recommendation concerning the length of the defendant's sentence of imprisonment, as described above in paragraph 11.B.1, will not apply to or limit any term of imprisonment that results from any later revocation of the defendant's supervised release.

### D. Fines

There is no recommendation or agreement as to a fine.

### E. Restitution

The Court must order restitution to every identifiable victim of the defendant's offense.

The parties have agreed that the defendant shall pay restitution to the victim in this case (the United States Department of Health and Human Services) in an amount to be determined prior to sentencing and not to exceed $2,517,360.12.

The defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. 18 U.S.C. §§ 3612(c) and 3613. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum

payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

The defendant agrees to make a full presentence disclosure of his financial status to the United States Attorney's Office by completing a Financial Disclosure Form and the accompanying releases for the purpose of determining his ability to pay restitution. The defendant agrees to complete and return the Financial Disclosure Form within three weeks of receiving it from government counsel. The defendant agrees to participate in a presentencing debtor's examination if requested to do so by government counsel.

## F.    Forfeiture

The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), and 18 U.S.C. § 981(a)(1)(C) as incorporated by 28 U.S.C. § 2461(c), without contest, any and all right, title, and interest, he may possess in property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the scheme underlying the violation of Count Two of the Amended Indictment.

In addition, defendant agrees to the entry of a forfeiture money judgment against him in favor of the United States in an amount of $209,735.72, representing the total value of the property subject to forfeiture for defendant's violation of Count

Two of the Amended Indictment, to the extent such value is not satisfied by the specific forfeitures set forth above.

Defendant agrees that the forfeiture money judgment may be satisfied, to whatever extent possible, from any property owned or under the control of defendant. To satisfy the money judgment, defendant explicitly agrees to the forfeiture of any assets as he has now, or may later acquire, as substitute assets under 21 U.S.C. § 853(p)(2) and waives and relinquishes his rights to oppose the forfeiture of substitute assets under 21 U.S.C. § 853(p)(1) or otherwise.

The defendant agrees to the entry of one or more orders of forfeiture, including the entry of a Preliminary Order of Forfeiture, incorporating the forfeiture of the above referenced property following his guilty plea, upon application by the United States as mandated by Federal Rule of Criminal Procedure 32.2. The defendant agrees that the forfeiture order will become final as to his at the time entered by the Court.

The defendant knowingly, voluntarily, and intelligently waives any challenge to the above-described forfeiture based upon the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

The defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives his right to challenge any failure by the court to advise him of his rights with respect to

forfeiture, set forth in Federal Rule of Criminal Procedure 11(b)(1)(J).  The defendant also expressly waives his right to have a jury determine the forfeitability of his interest in the above identified property, as provided by Rule 32.2(b)(5).

The defendant further waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, pronouncement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

The defendant agrees to hold the United States and its agents and employees harmless from any claims whatsoever in connection with the seizure and forfeiture of any property referenced above.

## G.    Special Assessment

The defendant understands that he will be required to pay a special assessment of $100, due immediately upon sentencing.

## 11.    Appeal Waiver

The defendant waives any right he may have to appeal his conviction on any grounds. If the defendant's sentence of imprisonment does not exceed the top of expected guideline range determined by the Court, the defendant also waives any right he may have to appeal his sentence on any grounds.

12. **Collateral Review Waiver**

The defendant retains the right to raise claims alleging ineffective assistance of counsel or prosecutorial misconduct, as long as the defendant properly raises those claims by collateral review under 28 U.S.C. § 2255. The defendant also retains the right to pursue any relief permitted under 18 U.S.C. § 3582(c), as long as the defendant properly files a motion under that section. The defendant, however, waives any other right he may have to challenge his conviction or sentence by collateral review, including, but not limited to, any right he may have to challenge his conviction or sentence on any grounds under 28 U.S.C. § 2255 (except for properly raised ineffective assistance of counsel or prosecutorial misconduct claims, as described above), 28 U.S.C. § 2241, or Federal Rule of Civil Procedure 59 or 60.

13. **Consequences of Withdrawal of Guilty Plea or Vacation of Judgment**

If the defendant is allowed to withdraw his guilty plea(s), or if the defendant's conviction or sentence under this agreement is vacated, the government may reinstate any charges against the defendant that were dismissed as part of this agreement and may file additional charges against the defendant relating, directly or indirectly, to any of the conduct underlying the defendant's guilty plea or any relevant conduct. If the government reinstates any charges or files any additional charges as permitted by this paragraph, the defendant waives his right to challenge

those charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

## 14.    Use of Withdrawn Guilty Plea

The defendant agrees that if he is permitted to withdraw his guilty plea for any reason, he waives all of his rights under Federal Rule of Evidence 410, and the government may use his guilty plea, any statement that the defendant made at his guilty plea hearing, and the factual basis set forth in this agreement, against the defendant in any proceeding.

## 15.    Parties to Plea Agreement

This agreement does not bind any government agency except the Criminal Division of the United States Department of Justice.

## 16.    Scope of Plea Agreement

This plea agreement is the complete agreement between the parties and supersedes any other promises, representations, understandings, or agreements between the parties concerning the subject matter of this agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to the defendant or to the attorney for the defendant at any time before the defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this plea agreement. If the parties have entered, or subsequently enter, into a written proffer or cooperation agreement,

though, this plea agreement does not supersede or abrogate the terms of that agreement. This plea agreement also does not prevent any civil or administrative actions against the defendant, or any forfeiture claim against any property, by the United States or any other party.

## 17.   Acceptance of Agreement by Defendant

This plea offer expires unless it has been received, fully signed, in the United States Attorney's Office by 5:00 p.m. on January 13, 2025. The government may withdraw from this agreement at any time before the defendant pleads guilty.

DAWN N. ISON
UNITED STATES ATTORNEY

GLENN S. LEON
Chief, Fraud Section
U.S. Department of Justice

*s/ Shankar Ramamurthy*

SHANKAR RAMAMURTHY
S. BABU KAZA
JEFFREY CRAPKO
Trial Attorneys
Criminal Division, Fraud Section
U.S. Department of Justice

Dated: 1/12/2025

Jan 14, 2025

By signing below, the defendant and his attorney agree that the defendant has read or been read this entire document, has discussed it with his attorney, and has had a full and complete opportunity to confer with his attorney. The defendant further agrees that he understands this entire document, agrees to its terms, has had all of his questions answered by his attorney, and is satisfied with his attorney's advice and representation.

Ronald Chapman
Patrick Hurford
Attorneys for Defendant

Ali Saad
Defendant

Dated: 1/12/2025

By signing below, the defendant and his attorney agree that the defendant has read or been read this entire document, has discussed it with his attorney, and has had a full and complete opportunity to confer with his attorney. The defendant further agrees that he understands this entire document, agrees to its terms, has had all of his questions answered by his attorney, and is satisfied with his attorney's advice and representation.

Ronald Chapman
Patrick Hurford
Attorneys for Defendant

Ali Saad
Defendant

Dated: 1/12/2025

1-12-25

1-14-25
PH

1/14/2025
PH